United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BULLSEYE LEAK DETECTION, INC.,

          Plaintiff,

      v.

JEREMY GARCIA,

          Defendant.

Case No. 25-cv-10395-LB

**ORDER DENYING MOTION TO DISMISS**

Re: ECF No. 10

### INTRODUCTION

This is a trademark-infringement action. Plaintiff Bullseye Leak Detection, Inc., holds U.S. Trademark Registration 5,739,791 for the standard-character mark BULLSEYE LEAK DETECTION. It contends that defendant Jeremy Garcia owns a competing leak-detection business (for plumbing, pools, and the like) in the San Francisco Bay Area and Central Valley under the identical name, causing consumer confusion. The complaint asserts five claims: (1) direct trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) direct trademark infringement, false designation of origin, and unfair competition under section 43(a) of the Lanham Act, *id.* § 1125(a); (3) common-law trademark infringement; (4) common-law unfair competition; and (5) unfair competition under Cal. Bus. & Prof. Code § 17200.

The defendant moves to dismiss the complaint on three grounds: (1) the plaintiff has not plausibly alleged priority of use of the mark; (2) the plaintiff has not plausibly alleged geographic

ORDER – No. 25-cv-10395-LB

overlap of services; and (3) amendment is futile because laches bars the claims. The motion is denied: the complaint plausibly alleges claims, including priority of use and consumer confusion, and the laches defense turns on fact questions unsuitable for resolution at the pleadings stage.

**STATEMENT**

The plaintiff is a California corporation with its principal place of business in West Sacramento, California. It was incorporated on March 16, 2009, and offers plumbing, leak detection, gas-line repair, sewer repair, and related services to residential and commercial customers.[1] Defendant Jeremy Garcia is a California individual with a principal place of business in San Jose, California. His business is "Bullseye Leak Detection," which since at least January 2014 has offered "identical" services: locating leaks in plumbing and swimming pools in the San Francisco Bay Area and the Central Valley.[2]

The plaintiff owns U.S. Trademark Registration No. 5,739,791 for the standard character mark BULLSEYE LEAK DETECTION in class 42 for "Inspection services, namely, detection of leaks in buildings, spas, pools ground, sewers." It was registered on April 30, 2019, based on an application filed September 28, 2018, and was made incontestable on April 3, 2025. The plaintiff has used the mark extensively and continuously in commerce in California since at least June 25, 2008, and in interstate commerce since at least July 12, 2016.[3]

The defendant has held the fictitious name "Bullseye Leak Detection" since August 19, 2009.[4]

On June 5, 2019, the plaintiff sent a cease-and-desist letter and resent it on April 17, 2020.[5] The defendant sent an email on April 30, 2020, that he would consult with a trademark attorney

---

[1] Compl. – ECF No. 1 at 2 (¶¶ 5–6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 2 (¶¶ 7, 10–11), 4 (¶ 26); Website Screenshot, Ex. A to *id.* – ECF No. 1-1.

[3] Compl. – ECF No. 1 at 3 (¶¶ 17–19); Trademark Registration, Ex. C to *id.* – ECF No. 1-3 at 2 (first use 6-25-2008; in commerce 7-12-2016); Notification, Ex. D to *id.* – ECF No. 1-4.

[4] Fictitious Bus. Name Recs. – ECF No. 10-1. The court judicially notices the public record. Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[5] Compl. – ECF No. 1 at 5 (¶¶ 34, 36); Letters, Exs. F & H to *id.* – ECF Nos. 1-6, 1-8.

United States District Court
Northern District of California

and had added a disclaimer to his website that he had no association with the plaintiff.[6] In early 2023, the plaintiff spoke with the defendant on the phone to try to resolve ongoing consumer confusion.[7] The plaintiff sent a follow-up email on February 1, 2023, proposing alternative names for the defendant's business and referencing phone calls that he had received "from people confusing our companies."[8] The parties tried to settle the matter repeatedly over the phone but did not reach an agreement.[9] The plaintiff continues to receive inquiries from customers who confuse the businesses.[10]

The plaintiff filed the lawsuit on December 4, 2025. The court held a hearing on the motion to dismiss on March 26, 2026. The court has federal-question jurisdiction. 28 U.S.C. § 1331. The parties consented to magistrate-judge jurisdiction.[11] *Id.* § 636(c)(1).

## LEGAL STANDARD

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It may fail by lacking a cognizable legal theory or sufficient facts under one. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts factual allegations as true and construes them favorably to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). But allegations must state a plausible claim. *Twombly*, 550 U.S. at 570. Threadbare recital of the elements of a claim, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] Compl. – ECF No. 1 at 5 (¶ 37); Email, Ex. I to *id.* – ECF No. 1-9.

[7] Compl. – ECF No. 1 at 5 (¶ 38).

[8] *Id.* at 6 (¶ 39); Email, Ex. J to *id.* – ECF No. 1-10.

[9] Compl. – ECF No. 1 at 6 (¶ 40).

[10] *Id.* (¶ 41).

[11] Consents – ECF Nos. 8, 11.

United States District Court
Northern District of California

**ANALYSIS**

The defendant moves to dismiss on three grounds: (1) the plaintiff failed to plausibly allege priority of use, which is necessary to establish ownership; (2) even if the plaintiff has a valid mark, it did not allege that the plaintiff serves the San Francisco Bay area or Central Valley (the defendant's markets), eliminating the possibility of consumer confusion; and (3) laches bars the claims.[12] These grounds turn on fact issues that are not resolvable by a Rule 12(b)(6) motion.

**1.   Prior Rights**

The claims for trademark infringement and unfair competition are under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and California common law. The elements of the California common-law claims are the same as the federal trademark claims. *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004) (trademark); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916–17 (9th Cir. 1980) (common-law unfair competition); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (unfair-competition claims under Cal. Bus. & Prof. Code § 17200 are "substantially congruent" to Lanham Act claims).

To establish a claim for trademark infringement, a plaintiff must allege (1) a valid, protectable mark, (2) the defendant used the same or a confusingly similar mark in commerce, and (3) the defendant's use is likely to cause confusion among consumers. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969–70 (9th Cir. 2007). The parties dispute whether there is a protectable ownership interest.

In trademark law, the standard test of ownership is priority of use. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996); *see Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999) (the analysis of "priority of use" is the same for infringement of a registered mark under 15 U.S.C. § 1114(1) or infringement of common-law trademark rights (also called unfair competition or false designation of origin) under § 1125(a)(1)(A)). To show a protectable ownership interest, it is not enough to invent or register the

---

[12] Mot. – ECF No. 10 at 4–6.

ORDER – No. 25-cv-10395-LB                4

mark first: the party claiming ownership must be the first to use it in the sale of goods or services. *Sengoku*, 96 F.3d at 1219.

When proving ownership, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark. *Id.* (citing 15 U.S.C. §§ 1057(b) & 1115(a)). A registrant thus is granted a presumption of ownership, dating to the filing date of the application for federal registration. *Id.* The non-registrant can rebut this presumption by showing by a preponderance of the evidence that the registrant had not established valid ownership rights in the mark at the time of registration. In other words, if the non-registrant can show that he used the mark in commerce first, "then the registration may be invalidated." *Id.* at 1220. The Lanham Act also creates a limited exception to the use-based priority rule, providing for a mark that is subject to a federal trademark application under Section 1(b) or Section 44 of the Act to obtain a "constructive use" date that may be earlier than the actual first-use date, meaning, a priority date with the same legal effect as the earliest actual use of a trademark at common law. *Gearsource Holdings, LLC v. Google LLC*, No. 18-cv-03812-HSG, 2020 WL 3833258, at *4 (N.D. Cal. July 8, 2020) (citing 15 U.S.C. § 1057(c) & 2 J. Thomas McCarthy on Trademarks and Unfair Competition § 16:17 (5th ed.)).

Therefore, to establish priority, a plaintiff must establish a date of first use — constructive or actual — that is before the defendant's alleged first use. *Id.* at *5.

Under the Lanham Act, "actual" trademark use occurs through "use in commerce," "which means 'the bona fide use of a mark in the ordinary course of trade, and not [use] merely to reserve a right in a mark.'" *Id.* at *7 (quoting *Brookfield*, 174 F.3d at 1051). A mark is "in use in commerce" for services "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127 (the word "commerce" means "all commerce which may lawfully be regulated by Congress"); *Gearsource*, 2020 WL 3833258, at *7.

For example, the display of a mark in promotional materials is insufficient for trademark rights to attach. *Gearsource*, 2020 WL 3833258, at *7 (the "dual requirement" that services be advertised and rendered in commerce means that "mere advertising by itself may not establish priority of use" (quoting *Rearden LLC v. Reardon Com., Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012) (cleaned up))). Similarly, the use of a mark in emails to potential customers or in business

*United States District Court*
*Northern District of California*

proposals is insufficient. *Id.* ("mere use in limited e-mail correspondence with lawyers and a few customers" was not use in commerce (quoting *Brookfield*, 174 F.3d at 1052)). "The purpose of a trademark is to help consumers identify the source, but a mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Id.* (quoting *Brookfield*, 174 F.3d at 1051).

The complaint alleges that the plaintiff has made "extensive and continuous use of the BLD registration at least as early as June 25, 2008, and in interstate commerce at least as early as July 12, 2016," before the defendant's alleged first use in August 2009.[13] The defendant distinguishes between "first use" in June 2008 and "first use in commerce" in July 2016, as cited in the trademark registration.[14] The complaint's allegation of use "in California" by June 2008 is reasonably read as an allegation that the plaintiff used the mark in connection with rendering services in California as of that date. Also, the defendant's filed fictitious business-name statement is not necessarily "use in commerce" of the mark. The defendant could have adopted the name before he rendered services. These are fact questions not resolvable on a Rule 12(b)(6) motion. Finally, the plaintiff has a federal registration, which carries a presumption of validity. 15 U.S.C. § 1057(b). The registration has become incontestable, which shifts the burden to the defendant to prove a defense. *Id.* § 1115(b); *Sengoku*, 96 F.3d at 1219. The defendant ultimately may be able to establish prior use as a defense, but he has not shown that the complaint does not plausibly allege priority.

### 2.  Geographic Limitations

The plaintiff is based in Sacramento, and the defendant is based in San Jose and allegedly does business in the San Francisco Bay Area and the Central Valley.[15] In a declaration, the plaintiff adds

---

[13] *See supra* Statement (citing Compl. – ECF No. 1 at 3 (¶ 19) & Trademark Registration, Ex. C to *id.* – ECF No. 1-3 at 2).

[14] Mot. – ECF No. 10 at 5; Trademark Registration, Ex. C to *id.* – ECF No. 1-3 at 2 (first use 6-25-2008; in commerce 7-12-2016).

[15] *See supra* Statement.

that it does work in Sacramento, the San Francisco Bay Area, and the Central Valley.[16] The court does not consider facts — other than the public records that it has judicially noticed — that are not alleged in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The issue is whether the plaintiff must plead overlap in the service territory.

Under the *Dawn Donut* rule, while a senior federal registrant has superior priority, there is no likely confusion for a court to enjoin unless the senior user shows a likelihood of entry into the junior user's trade territory because absent that entry, there is no likelihood that customers in that territory will be faced with two products or services marketed under confusingly similar marks. 4 J. Thomas McCarthy on Trademarks and Unfair Competition § 26:33 (5th ed.) (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959)). The Ninth Circuit has applied the rule: "[W]here a federal registrant has expanded its business to the point that the use of the conflictingly similar marks by the registrant and the unauthorized user are no longer confined to separate and distinct market areas and there is established the likelihood of public confusion, the federal registrant is entitled under the authority of the Lanham Act to injunctive relief." *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir. 1969); *see Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1250 (9th Cir. 2022) (citing rule approvingly).

The rule is a defense to injunctive relief and illustrates the element of consumer confusion: if competitors are using the marks in geographically separate and distinct market areas, with no real competition between them or present likelihood of overlap in market territories, there is no cause for injunctive relief based on infringement. *Lodestar*, 31 F.4th at 1250 (citing earlier version of McCarthy treatise, 5 McCarthy on Trademarks and Unfair Competition § 29:21).

Here, the complaint plausibly alleges actual consumer confusion: the word marks are identical, and consumers have confused the businesses, which operate in California in areas with geographic overlap.[17] "Operating in California" is broad enough to encompass the Bay Area and Central Valley, and the allegations of actual consumer confusion support geographic overlap: confusion

---

[16] Spatz Decl. – ECF No. 13-2 at 2 (¶ 2).

[17] *See supra* Statement.

would not occur without some overlap in the relevant market. The defense is fact-dependent and not resolvable on a Rule 12(b)(6) motion.

### 3. Laches

The Lanham Act has no statute of limitations. *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1023 (9th Cir. 2018). Instead, the Ninth Circuit applies the equitable doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit, and is a valid defense to trademark infringement claims." *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015). Courts apply a two-step process. *Pinkette*, 894 F.3d at 1025.

First, courts assess the delay by examining whether the most analogous state statute of limitations has expired. The analogous California statute is four years, which has expired. *Id.* The plaintiff sent its cease-and-desist letter in June 2019 and did not file suit until December 2025, more than six years later.

Second, the inquiry then pivots to the *E-Systems* factors: "(1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay." *Id.* (cleaned up) (citing *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)).

Also, laches does not apply to willful infringement. *DC Comics*, 802 F.3d at 1026. And laches is an affirmative defense that ordinarily cannot be resolved on a motion to dismiss unless the defense is apparent on the face of the complaint. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

The plaintiff contends that it contacted the defendant when it learned about the offending conduct in 2019. Once it gave notice, the defendant allegedly acquired actual knowledge of the infringement, rendering the infringement willful.[18] The complaint does not allege that the plaintiff sent a cease-and-desist letter as soon as he learned about the infringement. That said, whether the

---

[18] Opp'n – ECF No. 13 at 5–6.

United States District Court
Northern District of California

defendant's continued use of the mark after notice is willful is a fact question. The court also cannot assess prejudice to the defendant on this record.

In sum, the laches defense is not apparent on the complaint as a matter of law. The complaint plausibly alleges willful infringement. The length and reasonableness of the delay after the cease-and-desist letter, the effect of settlement negotiations, and prejudice cannot be resolved at the pleadings stage. Laches turns on questions of fact unsuitable for resolution at the pleadings stage.

## CONCLUSION

The motion to dismiss is denied. This resolves ECF No. 10.

**IT IS SO ORDERED.**

Dated: March 30, 2026

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California